UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JNESO, DISTRICT COUNCIL 1, IUOE,**<br><br>Petitioner,<br><br>v.<br><br>**PRIME HEALTHCARE, ST. MARY'S HOSPITAL,**<br><br>Respondent. | Civ. No. 20-18068 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

JNESO, District Council 1, IUOE (the "Union") is a labor organization representing employees at St. Mary's General Hospital, owned by Prime Healthcare. Pursuant to a collective bargaining agreement ("CBA"), the parties arbitrated a dispute involving the Hospital's refusal to hire a laid-off employee. The arbitrator entered an award in favor of the Union, which petitions to confirm that award. (DE 2.)[1] The Hospital cross-petitions to vacate the award. (DE 11.) For the following reasons, the Union's petition to confirm is **GRANTED**, and the Hospital's cross-petition to vacate is **DENIED**.

I. BACKGROUND

The Hospital employed a Union member, John Varghese, as a radiation therapist technician. (Award at 2.) He received a temporary layoff notice because the radiation department needed to install a TrueBeam radiation imaging system. (*Id.*) In the meantime, he filled another vacant position. (Cross-Pet. ¶ 45.)

---

[1]  Certain citations to the record are abbreviated as follows:

DE = docket entry

Award = Arbitration Award (DE 1, Ex. B)

CBA = Collective Bargaining Agreement (DE 1, Ex. A)

Cross-Pet. = Hospital's Cross Petition (DE 11-1)

A few months later, the Hospital posted a position for a radiation technician with two to three years' experience with the TrueBeam system. (Award at 3.) The Hospital did not offer Varghese the role because, in the Hospital's view, he lacked the requisite experience. (*Id.*) Nonetheless, Varghese had a radiation therapy license and was authorized to operate any radiation machines after training on them for two days. (*Id.* at 4.)

In response, the Union filed grievances with the Hospital and then initiated an arbitration, contending that the CBA required the Hospital to hire Varghese and train him on the TrueBeam equipment. (*Id.* at 7–8.) The arbitrator agreed, relying on two provisions of the CBA. The first provided that "[a]n employee subject to layoff may elect to fill any vacant position, provided s/he possesses the necessary qualifications of the position or be provided the opportunity to obtain those qualifications on the same basis as would be afforded a new hire for the position." (CBA, Art. 16, § 5g.) The second provided that "[p]resently employed bargaining unit members will be given first preference for all bargaining unit jobs." (CBA, Art. 26, § 2.)

The arbitrator, relying on testimony from Varghese and management, reasoned that (1) Varghese could operate the TrueBeam system with two days of training, (2) the manufacturer provides four to five days of training at no cost, (3) the Hospital provides training on equipment, and (4) other hospitals owned by Prime Healthcare provide training on similar equipment. (Award at 9–10.) As a result, "the Hospital failed to adhere to the CBA provision to give first preference to a current bargaining member who is qualified and can perform the job with the training the Hospital could have provided." (*Id.* at 10.) The arbitrator ordered the Hospital to assign Varghese to the radiation therapist technician position with backpay and provide him training. (*Id.* at 11.)

## II. STANDARD OF REVIEW

Section 301 of the Labor Management Relations Act gives federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). In addition, the Federal Arbitration Act

2

empowers federal courts to confirm, vacate, or modify arbitration awards. 9 U.S.C. §§ 9–11. Accordingly, federal courts may confirm, vacate, or modify arbitration awards arising from a CBA. *Hamilton Park Healthcare Ctr. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861–62 (3d Cir. 2016). In such cases, "courts are restricted in reviewing the decision of an arbitrator" with "a heavy degree of deference." *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 199 (3d Cir. 2019) (citations omitted). Still, courts "will vacate an award 'if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement.'" *Id.* (quoting *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004)).

## III.  DISCUSSION

The Hospital offers four reasons to vacate the award: (A) the arbitrator applied the wrong section of the CBA; (B) regardless, the arbitrator misinterpreted the section she did apply; (C) the arbitrator made erroneous factual findings; and (D) the award violates public policy. None is persuasive.

### A. Correct Section of the CBA

The Hospital argues that the arbitrator applied the wrong section of the CBA. (Hosp. Mot. at 4–6.) The arbitrator relied on Article 16, § 5g, which states that "[a]n employee subject to layoff may elect to fill any vacant position, provided s/he possesses the necessary qualifications of the position or be provided the opportunity to obtain those qualifications on the same basis as would be afforded a new hire for the position." (CBA, Art. 16, § 5g.) Instead, the Hospital contends, the arbitrator should have applied § 6, which provides that "[w]henever a vacancy or newly created position occurs in a bargaining unit job classification, bargaining unit employees shall be recalled in accordance with seniority in the reverse order in which they were laid off, provided they possess the necessary skill and ability to perform the job." (CBA, Art. 16, § 6.) The difference between the two provisions is that, under § 5g, an employee need not

already possess the qualifications but can be given an opportunity to obtain them (*i.e.*, training), while under § 6, no such option is available. If § 6 applies, the Hospital reasons, then the award cannot stand because Varghese did not have two to three years' TrueBeam experience and the arbitrator could not compensate for that lack by ordering the Hospital to provide training.

This argument comes down to a question of contract interpretation: Did the arbitrator correctly conclude that Varghese was "subject to a layoff" within the meaning of § 5g? An alleged "misinterpretation of the contract," however, does not ordinarily provide a basis to vacate an arbitration award. *Citgo*, 385 F.3d at 815 (citation omitted). In rare circumstances, courts may vacate an award "where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop." *Id.* at 816 (citation omitted). But this only occurs when an arbitrator so departs from the plain language of the agreement that the arbitrator essentially "dispense[s] his own brand of industrial justice." *Monongahela Valley*, 946 F.3d at 199 (citation omitted).

I cannot say that happened here. The application of the phrase "subject to a layoff" to these facts is open to interpretation. The Hospital says that § 5g "is limited to the circumstance when an employee is initially identified for layoff" and allows him to "move[] into a vacant position to avoid layoff." (Hosp. Mot. at 8.) That is a reasonable interpretation, but not the only one.

There are no strong indicia in the CBA as to the temporal limits of "subject to a layoff." Generally, "subject to" means "affected by or possibly affected by (something)." *Subject to*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subject%20to (last visited May 26, 2021). The arbitrator could rationally conclude that Varghese was "affected by" the layoff when the new position opened up because he was currently occupying a position by virtue of the fact that he had been laid off. Moreover, this was not some open-ended or permanent change of status; this was a temporary layoff pending completion of the TrueBeam system. One could reasonably conclude,

then, that Varghese remained in laid-off status. Whether or not this is the best reading of the CBA is not the issue; the arbitrator's interpretation is a reasonable one, which draws its essence from the CBA and does not bespeak a personal brand of industrial justice. When there are multiple reasonable interpretations, the arbitrator's pick among them cannot be erroneous and must stand. *Monongahela Valley*, 946 F.3d at 199–200.

### B. Misapplication of the CBA

As a backup, the Hospital contends that, even if § 5g applies, the arbitrator misapplied that section. Here, the Hospital focuses on the award's provision that Varghese could readily be trained to operate the TrueBeam system. Because new hires for the position would presumably already be qualified without further training, the Hospital reasons, Varghese would not be taking the position "on the same basis" as a "new hire." (CBA, Art. 16, § 5g.)

Again, the Hospital's argument is not unreasonable, but it cannot outweigh the "heavy degree of deference" I give to the arbitrator. *Monongahela Valley*, 946 F.3d at 199. The arbitrator reasoned that, as a general matter, the Hospital could rapidly provide the supplemental training that would qualify Varghese to operate the TrueBeam system. (Award at 9–10.) The language of § 5g is somewhat general, stating that the Hospital must provide the same opportunities as "a new hire for the position." (CBA, Art. 16, § 5g.) *See United States v. Hendrickson*, 949 F.3d 95, 98 (3d Cir. 2020) (explaining that the indefinite article "a" "has a generalizing force on the noun that follows it" (citations omitted)). Given the evidence the arbitrator heard, the arbitrator could reasonably conclude that the manufacturer's training or Prime Healthcare's training at other hospitals was of the same kind generally available to any new hire.

I reiterate that courts do not vacate awards unless they violate the spirit of the CBA. *See Monongahela Valley*, 946 F.3d at 199 ("[A]n award must still draw its essence from the words of the [CBA] . . . ." (cleaned up)). The purpose of the CBA provisions ostensibly is to use Union members for positions

5

whenever feasible. The Hospital could very easily do so in this case, according to the arbitrator's view of the evidence. To adopt the Hospital's proffered interpretation would allow a runaround of that purpose by incentivizing the Hospital to affirmatively seek out hirees whose qualifications exceed those of the Union workers, even if the Union workers could easily obtain those qualifications. The arbitration award here draws its essence from that obligation to hire Union members when possible.

In sum, the Hospital cannot show that the arbitrator's award so departs from the CBA as to warrant vacatur.

### C. Factual Errors

The Hospital argues that the arbitrator made three erroneous findings of fact: (1) the arbitrator relied on Varghese's testimony to establish training requirements, (2) the arbitrator relied on a document to establish the job description that wrongly listed the necessary experience to be one year, and (3) testimony about available training on similar equipment was too vague to permit a conclusion that it was relevant to the TrueBeam system. (Hosp. Mot. at 13–18.) But "a reviewing court must defer to the arbitrator's factual findings" as "the exclusive province of the arbitrator." *Citgo*, 385 F.3d at 816; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 508 (2001) ("[I]mprovident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." (quotation marks and citation omitted)). This is so because the parties agreed to have facts resolved by the arbitrator. *Garvey*, 532 U.S. at 509–10. Accordingly, I cannot vacate the award based on alleged factual errors.[2]

---

[2] Nor can I say that this award was "entirely unsupported by the record." *Monongahela Valley*, 946 F.3d at 199. The Hospital's first and third alleged errors are based on allegations that findings were not supported by the correct or adequate testimony. They were, however, based on *some* testimony; the question is one of interpretation. As to the second alleged error, the arbitrator explained that the position originally called for one year of experience but was amended to require two to three. (Award at 3.)

### D. Public Policy

Finally, the Hospital argues that the award runs contrary to public policy. (Hosp. Mot. at 18–20.) There is an exception to general rule of deference to arbitrators when the award "violates a well defined and dominant public policy." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (quotation marks and citation omitted). "[A]ny such public policy must be explicit, well defined, and dominant. It must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *E. Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000) (quotation marks and citation omitted).

As a qualifying public policy, the Hospital points to propositions in *Belmar v. Cipolla*, 475 A.2d 533 (N.J. 1984). There, the New Jersey Supreme Court addressed whether a hospital's exclusive contract with a group of anesthesiologists for the provision of all anesthesiologic services at the hospital violated public policy. *Id.* at 534. The court explained that it "normally do[es] not interfere with a reasonable management decision concerning staff privileges as long as that decision furthers the health care mission of the hospital." *Id.* at 538. Nonetheless, hospitals must "balanc[e] the interests of the hospital management with those of a doctor who desires to practice at the hospital," always with an eye towards public health. *Id.*

The Hospital argues that the arbitrator violated the principles stated in *Belmar* by overruling the Hospital's view of the necessary qualifications to serve patients. (Hosp. Mot. at 20.) Assuming that the *Belmar* principles are a well-defined public policy,[3] the Hospital's argument fails because the award is not contrary to those principles. It might be the case that permitting an unqualified person to operate the TrueBeam system has public policy implications. But I cannot disturb the arbitrator's factual findings that Varghese could readily become qualified for the position with training available to the Hospital. Thus, I

---

[3] One can doubt, however, that the public policy concerns of *Belmar* have the same force here. *Belmar* deals with privileges for doctors, not technicians.

7

cannot reason, as the Hospital would like, that the award risks public health by forcing the Hospital to employ an unqualified employee. *See Rohm & Haas Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Eng., Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC*, 781 F. Supp. 2d 251, 256 (E.D. Pa. 2011) (argument that award violated public policy against workplace violence failed because arbitrator found that worker was not dangerous).

## IV. CONCLUSION

For the reasons set forth above, the Union's petition to confirm the arbitration award is granted, and the Hospital's cross-petition to vacate the arbitration award is denied.

A separate order will issue.

Dated: June 3, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**